In re the JULIEN COMPANY, Debtor.

Jack F. MARLOW, Trustee,
Plaintiff/Counter–
Defendant,

v.

UNIVERSAL WAREHOUSE COMPANY,
Defendant/Counter–Plaintiff,

v.

The JULIEN COMPANY, Debtor; Bankers Trust Company; Bank One, Texas N.A.; Amsterdam–Rotterdam, N.V.; Bank Mees and Hope, N.V.; Federal Asset Management Company; French American Banking Corporation; and Bayerische Vereins Bank, A.G., Defendants by Counterclaim.

Bankruptcy No. 90–20283–B (MJN).
Adv. No. 90–0200.

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Nov. 26, 1991.

See also 136 B.R. 743.

David H. Jones, Walter, Dyer & James, Memphis, Tenn., for Universal Warehouse Co.

William J. Landers, Martin, Tate, Morrow & Marston, P.C., Memphis, Tenn., for Bankers Trust Co.

William H. Kiekhofer, Kelley, Drye & Warren, Los Angeles, Cal., for Universal Warehouse Co.

John L. Ryder, Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., for Amsterdam–Rotterdam, N.V.

J. David Blaylock, Udelsohn, Blaylock & Marlow, Memphis, Tenn., for trustee.

Julie C. Chinn, Memphis, Tenn., Asst. U.S. Trustee.

C. Wade Cooper, Jackson & Walker, Dallas, Tex., for Bank One, Texas, N.A.

Douglas W. Wilkerson, Wilkerson & Stafford, Dyersburg, Tenn., for Federal Asset Management Co.

James F. Gleason, Jr., Hertzog, Calamari & Gleason, New York City, for Bayerische Vereins Bank, A.G.

Barry Redick, Risa M. Rosenberg, Milbank, Tweed, Hadley & McCloy, New York City, for Bank Mees & Hope, N.V.

William J. Lowy, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for French American Banking Corp.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

WILLIAM H. BROWN, Bankruptcy Judge.

In this adversary proceeding, Universal Warehouse Co. ("Universal") was sued by Jack F. Marlow, Trustee for the Julien Company ("Debtor") in a complaint seeking a turnover of 380 bales of the debtor's cotton which was stored by Universal and against which there were alleged to be lien claims for bale specific charges and for non-bale specific or general lien charges. Universal answered and counterclaimed against the Trustee and the other counterdefendants ("Lenders"). Amended pleadings have been filed by the parties. In its pleadings, Universal stated that at the time of the bankruptcy filing (January 10, 1990), it had in storage 380 bales of the debtor's cotton but that it had previously received from the debtor and shipped 19,620 bales of cotton for which payment had not been made, and Universal sought to spread its asserted general lien for the 19,620 bales to the 380 bales on hand at the time of the bankruptcy filing.

The Court has recently entered an opinion and order in Adversary Proceeding 90–0135 which will determine some of the issues in the present adversary proceeding because both proceedings involve application of Uniform Commercial Code ("UCC") § 7–209, as adopted in California. *See*, *Western Cotton Services Corp. v. Marlow, et al.*, 136 B.R. 743, (Bankr.W.D.Tenn. 1991). This opinion contains findings of fact and conclusions of law pursuant to F.R.B.P. 7052 and 7056.

### FINDINGS OF FACT

1. Universal is a warehouse licensed in the state of California and governed by California law.

2. The Trustee has sold the 380 bales of the debtor's cotton which was stored at Universal as of the bankruptcy filing date, which sale occurred under this Court's order dated February 15, 1990, which order permitted any liens to attach to sale proceeds.

3. By order dated September 4, 1990, this adversary was consolidated for discovery purposes with adversary proceeding 90–0135, which involved Western Cotton Services Corp.

4. In his responsive pleading, the Trustee asserted that he had paid $6,000.00 to Universal under a reservation of all rights, claims, and defenses and that Universal was not entitled to that sum. (See Consent Order dated July 12, 1990).

5. Cross motions for partial summary judgment have been filed. Solely for purposes of its motion the Lenders assumed all facts alleged by Universal to be true and correct. The Lenders assert a lien on all

collateral of the debtor, including the 380 bales of cotton at issue here. The Lenders assert a "pure question of law" as to the warehouse receipts at issue. (Lenders' Motion, p. 7)

6. In support of the Lenders' motion, an affidavit of William J. Landers, an attorney for Bankers Trust Company ("BTCo") was filed, but this affidavit does not address Universal. Rather, it is directed toward certain other federally licensed and state licensed warehouses in states other than California. However, the affidavit does have attached as Exhibit A–32 a document purporting to be a non-negotiable warehouse receipt from Universal for the debtor's account, dated December 26, 1989, for 190 bales of cotton. This particular document contains no language referring to liens.

7. On June 3, 1991, this Court signed an order staying and consolidating certain discovery in this and related adversary proceedings, each concerning warehouse liens. That order permitted a party opposing summary judgment to file an affidavit pursuant to F.R.C.P. 56(f) stating that certain further discovery was needed on essential facts. No such affidavit has been filed in this adversary proceeding.

8. The Trustee responded to the Lenders' motion for partial summary judgment in this adversary proceeding by adopting the position of the Lenders that, as a matter of law, Universal did not have a general lien on the proceeds of the 380 bales of cotton.

9. Universal filed its motion for partial summary judgment stating that as a matter of law under the controlling California UCC, Universal was secured by a general warehouseman's lien which was superior to any of the Lenders' liens. Universal sought disgorgement from the Lenders of $40,152.60 plus pre- and post-judgment interest.

10. An affidavit of Mike Ellis, general manager of Universal, was filed in support of Universal's motion. That affidavit asserts, in pertinent part:

a. Universal is licensed by the city of Carson, California.

b. In December, 1989, Universal contracted with the pre-bankruptcy debtor to ship approximately 20,000 bales of cotton for which Universal would invoice the debtor for its unloading and loading charges and for related charges.

c. Under the customary business practice Universal would invoice the debtor after shipment of the entire 20,000 bales.

d. Prior to the bankruptcy filing, Universal had shipped all but 380 bales.

e. Upon receiving notice of the bankruptcy, Universal stored the 380 bales.

f. As of the bankruptcy filing, Universal was owed $46,152.60, which consisted of $40,152.60 in charges relating to the previously shipped cotton and $6,000.00 in charges relating to the 380 stored bales.

g. Pursuant to the terms of this Court's July 12, 1990 order, the Trustee paid $6,000.00 to Universal's attorneys and Universal released the warehouse receipts and the 380 bales for sale by the Trustee.

11. The parties filed memoranda of law supporting their positions.

12. The Trustee filed an objection to Universal's motion for partial summary judgment, which objection stated that material issues of fact existed. However, no supporting affidavits were filed.

13. A supplemental affidavit of Mr. Ellis was then filed, which affidavit asserts in pertinent part:

a. Universal is a warehouse which customarily performs cotton warehouse services including: unloading, transferring, loading, marking, labeling, repacking, weighing, sorting and storing.

b. In mid-December, 1990, approximately 16,200 [sic] bales of the Julien Company's contracted cotton arrived and were transferred by Universal from rail box cars into containers, then transported to dock for ship-

ment. These "transloading" functions were performed at the debtor's request.

c. Subsequently 380 bales arrived and were transferred from box cars into containers, then stored in Universal's warehouse, pending shipping directions.

d. Upon storage of the 380 bales, Universal prepared two non-negotiable warehouse receipts, exhibited to the affidavit. Each receipt is for 190 bales and the receipts are dated December 26, 1990. [One of the receipts is identical to Exhibit A–32 to Mr. Landers' affidavit.] The receipts were sent to the debtor.

e. Universal notified the debtor that it would not ship the 380 bales until it received payment for the previously shipped bales.

14. The two non-negotiable warehouse receipts appear to be computer generated forms which contain no language referring to liens of any type, nor is there any reference to the UCC. (Contrast finding of fact number 12 as to Western Cotton Services Corp. in Adv.Proc. No. 90–0135.)

## APPLICABLE STATE LAW

UCC § 7–209, as adopted in California, provides as follows:

(1) A warehouseman has a lien against the bailor on the goods deposited or on the proceeds thereof in his possession for charges for storage, processing incidental to storage, or transportation, including demurrage and terminal charges, insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law. If the person on whose account the goods are held is liable for like charges or expenses in relation to other goods whenever deposited, the warehouseman also has a lien against him for such charges and expenses whether or not the other goods have been delivered by the warehouseman. But against a person to whom a negotiable warehouse receipt is duly ne-

gotiated a warehouseman's lien is limited to charges specified on the receipt or if no charges are so specified then to a reasonable charge for storage of the goods covered by the receipt subsequent to the date of the receipt.

## CONCLUSIONS OF LAW

This is a core proceeding. 28 U.S.C. § 157(b)(2)(K).

The only evidence before the Court supports a finding that Universal is a warehouse, licensed in the state of California; thus UCC § 7–209(1) as adopted in California controls. *See, Bache v. Hinde*, 6 F.2d 508, 511 (6th Cir.1925), *cert. denied*, 269 U.S. 581, 46 S.Ct. 106, 70 L.Ed. 423 (1925). As the Court noted in its earlier opinion concerning Western Cotton Services, also a California warehouse, an examination of UCC § 7–209(1) reveals three sentences. "The first describes the specific, possessory lien which a warehouseman may claim for enumerated charges and expenses. The second sentence describes the general lien which *may* be asserted by a warehouseman 'for like charges or expenses in relation to other goods whenever deposited ...' The third sentence applies a limitation on the general lien as against a person to whom a negotiable warehouse receipt is duly negotiated." *Western Cotton Services Corp. v. Marlow, supra,* 752.

The Lenders moved for partial summary judgment as to Universal and based their motion upon Universal's affidavits which indicated that Universal was not engaging in warehousing as contemplated under UCC § 1–201(45), which defines a warehouse receipt as "a receipt issued by a person engaged in the business of storing goods for hire." As to the 19,620 bales, it appears that Universal never received them on deposit as a warehouse but rather that Universal acted in a shipping capacity. The Lenders also question whether the two receipts issued by Universal on the 380 bales were in fact warehouse receipts under UCC § 7–202 and whether the two receipts were ever "issued" as contemplated by Article 7 of the UCC.

■ As to the issuance question, Mr. Ellis' supplemental affidavit states that the two non-negotiable receipts were sent to the debtor at the debtor's instruction. Therefore, the Court concludes from the unrefuted Ellis affidavits that the two receipts were issued. *See, e.g., In re Knoware, Inc.*, 57 B.R. 163 (Bankr.D.Mass. 1986).

■ As to the question of whether the two receipts contain sufficient information to be warehouse receipts under UCC § 7–202(2), the Court observes that the receipts are devoid of most information normally seen in a warehouse receipt. However, failure to supply all information specified in UCC § 7–202 does not render the receipt a nullity. UCC § 7–202(1) states that "[a] warehouse receipt need not be in any particular form." Failure to include all of UCC § 7–202's enumerated items merely exposes Universal to liability for any damages caused by its omission to any entity so injured. UCC § 7–202(2). Clearly the Trustee or Lenders could argue that they have been monetarily injured by their requirement to pay the $6,000.00 in charges relating to the 380 bales; however, the Court does not believe that is the type damage referred to in UCC § 7–202(2). The Trustee and Lenders certainly expected to pay bale specific charges incurred and relating to cotton stored as of the bankruptcy filing date. In fact, no proof has been offered as to damages. Rather, the Lenders argue that Universal was not a warehouse (a fact established in Universal's favor by the Ellis supplemental affidavit), that Universal never "issued" the warehouse receipts (a fact established in Universal's favor by the Ellis supplemental affidavit), and that the two receipts are not in fact warehouse receipts. As to this last point, the two documents are bare-boned but they are captioned non-negotiable warehouse receipts, and the Ellis affidavits establish that Universal did receive and store in its warehouse the 380 bales for which Universal incurred $6,000.00 in charges. *See, e.g., Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2nd Cir.1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984). The Court finds and concludes that Universal was a warehouse as to the 380 bales, that it issued two warehouse receipts and that it did warehouse the 380 bales. Thus, Universal is entitled to summary judgment granting it a bale specific warehouse lien for the 380 bales.

■ As to whether the previously shipped 19,620 bales were ever "deposited" with Universal, this Court held in the Western Cotton Services adversary proceeding, previously referred to, that in order to enjoy a general or spreading lien under the second sentence of UCC § 7–209(1) a warehouseman must prove that "at some point in time the other goods to which a general lien is sought to be spread have actually been deposited with the warehouseman." *Western Cotton Services Corp. v. Marlow, supra*, p. 752. The only factual proof states that those bales were merely transloaded. (*See* the Ellis supplemental affidavit.) Only if the 19,620 bales were deposited in a bailment/warehousing arrangement with Universal would Universal be entitled to spread its possessory lien as to the 380 stored bales to the previously deposited 19,620 bales. Because the factual issue of lack of warehouse deposit is resolved from Universal's affidavits, the Court must deny Universal's motion for partial summary judgment as to a spreading or general lien on the 19,620 bales. Further, because Universal, as the responding party to the Lenders' motion for summary judgment, has not established an essential element to its claim for general lien, that is the depositing of the 19,620 bales with Universal as a warehouse, the Lenders are entitled to summary judgment. *See, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–1480 (6th Cir.1989).

As to the 380 bales which were stored and for which non-negotiable warehouse receipts were issued, the first sentence of UCC § 7–209(1) gives Universal a possessory lien for the described charges. The Ellis affidavits, unrefuted by the Trustee or Lenders, state that $6,000.00 in charges relating to the 380 stored bales were incurred. The Trustee and Lenders had ample opportunity to conduct discovery on these charges or to raise factual issues

concerning the charges. Summary judgment may only be issued where "there is no *genuine* issue as to any *material* fact and ... the moving party is entitled to a summary judgment as a matter of law." F.R.C.P. 56(c), *emphasis added; see also, In re Suburban Motor Freight, Inc.,* 124 B.R. 984 (Bankr.S.D.Ohio 1990). The $6,000.00 in charges relating to the 380 warehoused bales had been paid under a reservation of the Trustee's rights, claims and defenses, but no factual dispute as to the $6,000.00 has been presented. The Court will grant the summary judgment for Universal as to the $6,000.00 in charges related to the 380 bales.

IT IS THEREFORE ORDERED:

1. Universal's motion for summary judgment as to the charges of $6,000.00 relating to the bale specific charges for the 380 stored bales, for which non-negotiable warehouse receipts were issued, is granted.

2. Universal's motion for summary judgment as to a general or spreading lien for the 19,620 bales previously shipped is denied because of the absence of proof that those 19,620 bales were ever deposited in Universal's warehouse.

3. The Lender's motion for partial summary judgment is granted as to the lack of a spreading or general lien on the 19,620 bales previously shipped but not warehoused by Universal.

4. Universal is entitled to retain the $6,000.00 in satisfaction of *its* possessory, bale specific lien on the 380 bales, and the Trustee and Lenders have no further claims to that $6,000.00.

5. Universal's request for interest is denied because it has been paid the $6,000.00.

6. Universal may file an unsecured claim for the $40,152.60 relating to the previously shipped 19,620 bales.

7. This adversary proceeding is concluded and after this Order becomes final, the clerk may close this proceeding, with each party to bear its own costs.

SO ORDERED.